Affirmed and Opinion filed October 2, 2003














Affirmed and
Opinion filed October 2, 2003.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO.
14-02-00489-CR

_______________

 

HOMERO HERRERA
HERNANDEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

__________________________________________________

 

On Appeal from the 21st District Court

Burleson County, Texas

Trial Court Cause No. 12,328

__________________________________________________

 

O P I N I O N

 

            Homero
Herrera Hernandez appeals a conviction for capital murder[1] on
numerous grounds.  We affirm.




 








                                                    Extraneous Offense Evidence

                                                                         Notice

            Appellant’s first issue argues that
the trial court erred in admitting extraneous offense evidence because the
State failed to provide him with sufficient notice of its intent to introduce
such evidence at trial, as required by Texas Rule of Evidence 404(b).[2]  With regard to the extraneous offense
evidence in the form of taped statements (regarding drug activity, shooting a
gun at a wrecked Blazer, attempting to sell an altered weapon), appellant
claims that the State’s notice was inadequate because he was provided the taped
statements at the time his counsel was appointed, over three months before he
filed his request for notice, and thus not in response to the request.  With regard to the extraneous offense evidence
that was not contained in his taped statements (such as bullets recovered from
the wrecked Blazer, a photo depicting appellant’s gang affiliation, testimony
by Wendy Vasquez that he shot a gun outside of her truck, testimony by Katie Stultz that he tried to sell her the murder weapon, and Detective
Angel Martinez’s testimony regarding appellant’s alleged gang apparel),
appellant asserts that the State failed to give any kind of notice of its
intent to offer.  The State does not
assert that it gave proper notice but only that appellant was not harmed by the
lack of notice.

            The purpose of the rule 404(b)
notice requirement is to prevent surprise (i.e.,
rather than to exclude evidence).  Tran v. State, No. 74040, 2003 WL
1799013, at *7 (Tex. Crim. App. April 2,
 2003).  Therefore, if the
trial court erred in admitting the evidence due to lack of notice (as
contrasted from other inadmissibility), we must determine whether the record
reflects harm to appellant in terms of surprise.[3]  Such harm might exist, for example, if the
lack of notice prejudiced appellant’s ability to contest the admissibility of
the evidence, rebut it, or offer evidence or arguments to mitigate it.[4]  However, we find no indication in the record
(or appellant’s brief) of any such prejudice or that notice from the State
could have materially enhanced defense counsel’s ability to counter this
evidence.  Therefore, we conclude that
any error in admitting the extraneous offense evidence without the requisite
notice was harmless,[5] and
we overrule appellant’s first point of error.

                                                               Prejudicial Effect

            Appellant’s second issue contends
that the trial court abused its discretion by admitting the extraneous offense
evidence, referred to in issue one, because it was irrelevant and,
alternatively, unfairly prejudicial to appellant.

            A trial court’s decision to admit
evidence is reviewed for abuse of discretion and will thus be reversed only if
it is outside the zone of reasonable disagreement.  Allen
v. State, 108 S.W.3d 281, 284 (Tex. Crim. App. 2003). 
Relevant evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice.  Tex.
R. Evid. 403. 
However, rule 403 favors admission of relevant evidence and carries a
presumption that relevant evidence will be more probative than
prejudicial.  Allen, 108 S.W.3d at 284.

            As appellant’s brief acknowledges,
the State offered the extraneous offense evidence to show that appellant and
the complainant were partners in drug activities and had a close enough
relationship that the complainant would have confided in appellant such things
as where he kept his handgun (the murder weapon) and would have allowed
appellant to get within point-blank range to shoot the complainant.  Appellant contends that this theory was  speculative, based on inconsistent
statements, and offered to bolster the State’s weak case with evidence of
appellant’s bad character.  However, this
unsupported contention is not sufficient to overcome the presumption that the
evidence was more probative that prejudicial. 
Therefore, appellant’s second issue is overruled.

                                                 Lesser-included Offense Charge

            Appellant’s third issue asserts that
the trial court erred by denying his request to include the lesser-included
offenses of burglary and theft in the court’s charge because there was evidence
that: (1) appellant was not the triggerman; (2) there was no conspiracy to
commit the burglary; (3) the killing was not committed in furtherance of a
conspiracy to commit burglary; and (4) appellant should not have anticipated
the killing.

            A jury charge must be given on a
lesser offense if: (1) it is included within the proof necessary to establish
the offense charged;[6] and
(2) some evidence exists in the record that if the defendant is guilty, he is
guilty only of the lesser offense.  Hampton v. State, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003).[7]  Thus, evidence that the defendant committed
no offense does not require a lesser-included offense charge.  Lofton
v. State, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001). 
When the State has tried a defendant on an indictment in which
alternative theories of capital murder are alleged, the defendant is entitled
to a requested lesser-included offense charge if a rational jury could convict
him only of the lesser-included offense after considering each of the
alternative theories of commission.  Feldman v. State, 71 S.W.3d 738, 752 (Tex. Crim. App. 2002).  In
that event, evidence must exist that negates each alternative theory on which
the greater offense has been alleged.  Id. at 753.

            In this case, the indictment alleged
that appellant fatally shot the complainant while  burglarizing his habitation.[8]  The jury charge authorized the jury to
convict appellant of capital murder either as the principal actor or as a party
and conspirator to the burglary.[9]  The State does not dispute that burglary and
theft are lesser-included offenses of capital murder, as it was charged in this
case, satisfying the first prong of the test. 
Therefore, our only issue is on the second prong, whether there is some
evidence by which a rational jury could acquit appellant of capital murder but
convict him of burglary or theft.

            As to the first of the two
alternative theories of capital murder, the second prong is satisfied in that
the record contains evidence that appellant was not the principal actor, i.e., the “triggerman,” who shot the
complainant.  On the alternative
(party-conspiracy) theory, the second prong will be satisfied if there is any
evidence that: (1) there was no murder; (2) the murder was not committed in
furtherance of the conspiracy; or (3) the murder should not have been
anticipated as a result of carrying out the conspiracy.[10]

            As to the first item, it is
undisputed that a murder occurred.  As to
the second item, appellant argues that the murder was not committed in
furtherance of a conspiracy to burglarize the complainant’s home because there
was no such conspiracy.  However, the
facts appellant relies on to show the lack of such a conspiracy[11]
(even if supported by evidence in the record, which we do not decide) would
also show that a burglary was not committed at all or that appellant did not
participate in it, not that he was guilty of committing only a burglary. 

            Appellant also contends that the
murder was not committed in furtherance of the conspiracy to commit burglary
because the actual triggerman, Bautista, killed the complainant for other
reasons, i.e., because the
complainant stole money or drugs from Bautista and to assure that the
complainant would not inform on Bautista. 
However, before going to the complainant’s home, Bautista expressed an
intent to take the complainant’s belongings, and the murder unquestionably
facilitated the burglary.  Therefore, the
fact that Bautista had additional reasons for committing the murder is not
evidence that it was not committed in furtherance of the conspiracy to commit
the burglary.

            As to the third item, appellant
relies on the following facts to show that the murder should not have been
anticipated: (1) appellant did not know where Bautista got the gun he used to
shoot the complainant; (2) Bautista did not tell appellant anything when they
drove to the complainant’s house; (3) Bautista did not tell appellant he would
kill the complainant; and (4) Bautista got the gun from the complainant’s
house.  However, the evidence is uncontroverted that appellant knew Bautista to be violent
and that Bautista was going to the complainant’s house because he believed the
complainant had stolen from him in their drug dealings.  From these circumstances, a murder should
have been anticipated from the conspiracy, and the evidence that appellant had
not seen Bautista with a weapon and Bautista had not expressed an intent to
kill the complainant did not show that a murder should not have been
anticipated.  Therefore, based on the
contentions in appellant’s issue, a jury could not have rationally found that
he was only guilty of burglary or theft. 
Accordingly, he was not entitled to a charge on those lesser-included
offenses, and his third point of error is overruled.

Sufficiency of the Evidence

            Appellant’s fourth issue alleges
that the evidence is legally and factually insufficient to prove that appellant
was the triggerman or that the complainant was killed in furtherance of a
conspiracy to commit burglary and appellant should have anticipated the
killing.

            Evidence is legally insufficient if,
viewed in the light most favorable to the prosecution, no rational jury could
find the defendant guilty beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319
(1979); Bustamante
v. State, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003). 
Evidence is factually insufficient if, viewed in a neutral light, the
evidence supporting the verdict is so weak or so against the overwhelming
weight of contrary evidence as to render the verdict clearly wrong and
manifestly unjust.  Bustamante, 106 S.W.3d. at
740.  When the trial court’s charge
authorizes the jury to convict on several different theories, as in this case,
the verdict of guilty will be upheld if the evidence is sufficient on any of
the theories.  Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).

            In support of his legal and factual
sufficiency challenges, appellant argues that: (1) the evidence shows the
murder was drug-related, rather than the result of a conspiracy to commit
burglary; (2) there is no evidence that appellant was told or knew of any
firearms that might be used or of any intention by Bautista to do other than
get back his money or drugs from the complainant; (3) the evidence showed that
appellant was afraid of Bautista and simply obeying his orders.[12]  However, this section of appellant’s brief
contains no record cites to support these factual assertions.  In addition, there was evidence in the case
that appellant: (1) had heard Bautista say he wanted to get a truck and go to
the complainant’s house because the complainant had things he wanted; (2) had
heard Bautista say he needed to “fix” things with the complainant and make sure
the complainant would not tell on him with the police; (3) had heard Bautista
say that he needed to do something about the people who stole his money and
cocaine; (4) knew that Bautista had threatened other people with guns; (5)
drove Bautista to the complainant’s house; (6) 
broke through the back door window so Bautista could enter the house;
(7) was present there when complainant was shot; (8) stole goods from the
complainant’s house; and (9) opened the trunk of the car so Bautista could put
the stolen property in it.  In addition,
items belonging to the complainant, including the gun Bautista used to shoot
him, were found by police at appellant’s house after appellant attempted
unsuccessfully to sell the gun to a pawnshop. 
This evidence is legally sufficient to prove that the complainant was
killed in furtherance of a conspiracy to commit burglary and that appellant
should have anticipated the killing.

            In support of his factual
sufficiency claim, appellant claims that: (1) there was not a conspiracy to
burglarize the complainant because the evidence shows that appellant was afraid
of Bautista and simply obeyed his orders; (2) the killing was not in
furtherance of a conspiracy to burglarize the complainant because the evidence
showed it instead occurred because of a bad drug deal; and (3) the killing
should not have been anticipated by appellant because there was no evidence to
show that a confrontation was foreseeable or that appellant knew there were any
weapons in Bautista’s possession or in the complainant’s home.  Again, this section of appellant’s brief
provides no cites to authority or the record to support these contentions.  In addition, a general fear of Bautista by
appellant, even if supported by the evidence, would not be a defense in the
absence of an immediate threat or, alternatively, if appellant intentionally,
knowingly, or recklessly placed himself in a situation in which he would be
subjected to compulsion.[13]  As explained in the preceding section, on the
lesser-included offense charge, appellant’s second and third contentions also
fail to show the lack of a conspiracy or that the murder should not have been
anticipated as a result of carrying out the conspiracy to commit the
burglary.  Therefore, appellant’s fourth
issue fails to demonstrate that the evidence was legally or factually
insufficient and is overruled.

 

Exclusion of Co-defendant’s Testimony

            Appellant’s fifth issue contends
that the trial court abused its discretion by not allowing appellant to call
Bautista to the stand to show that he was afraid of Bautista and that no
conspiracy existed between them.  In
particular, appellant asserts that he had a right to call Bautista to testify
live so the jury could hear his voice, observe his physical characteristics,
assess his demeanor, and thereby find that there was no conspiracy and
appellant acted out of fear.  Moreover,
appellant claims that Bautista had no right to assert a Fifth Amendment
privilege against self-incrimination because the questions appellant intended
to ask could not have possibly incriminated Bautista.

            A witness’s constitutional privilege
against self-incrimination overrides a defendant’s constitutional right to
compulsory process of the witness.  Tran, 2003 WL 1799013 at 5 n.5.
Therefore, a defendant generally may not call as a witness a co-defendant who
has indicated he will assert his privilege against self-incrimination.  Anderson v. State, 717 S.W.2d 622, 626 (Tex. Crim. App. 1986). 
This privilege extends not only to answers that would themselves support
a conviction, but also those that would furnish a link in the chain of evidence
needed to prosecute the claimant.  Ohio v. Reiner, 532 U.S. 17, 20
(2001).  For the privilege to apply, it
need only be evident from the implications of the question, in the setting in
which it was asked, that a responsive answer, or explanation why it cannot be
answered, might be dangerous in that an injurious disclosure could result.  Id. at
21.  Therefore, a claimant may be
required to testify only if it clearly appears to the court that he is mistaken
as to having a reasonable cause to apprehend danger from answering.  Hoffman
v. United States, 341 U.S. 479, 486
(1951).

            In this case, the record reflects
that Bautista, a co-defendant who was then awaiting his own trial for the same
offense, was questioned by the judge and affirmatively stated that he intended
to invoke his Fifth Amendment right based on the advice of counsel.[14]  Appellant’s counsel stated that the questions
he would ask Bautista were to explore appellant’s statements indicating his
fear of Bautista, describing him as a “big, strong, scary guy”; to ask him his
height, weight, age, educational background, where he came from; and to
“corroborate any evidence that the State introduced and opened the door
to.”  As indicated previously, in
discussing appellant’s fourth issue, a general fear of Bautista by appellant
would not have been material in this case. 
Conversely, to the extent any questioning of Bautista would have been
material to appellant’s case, it posed a legitimate risk of incriminating
Bautista.  Under these circumstances,
appellant’s fifth issue fails to demonstrate error by the trial court in not
allowing appellant to call Bautista to testify, and it is overruled.

                                                        Victim Impact Evidence

            Appellant’s sixth issue argues that
the trial court erred in admitting two photographs depicting the complainant
and members of his family and two small children holding dolls because these
photos were relevant only as victim impact evidence, which is admissible only
for determining punishment, not guilt or innocence.  Appellant further argues that the photos were
unnecessary because the complainant had already been identified, and the
potential to improperly generate sympathy from the jury was great.

            The State asked five questions regarding the photos to
establish that the witness could recognize the complainant in the photos and
did not refer to them again during the case.  There is no indication in the record that the jury was shown the photos
when they were admitted into evidence or subsequently.  Although the jury heard six days of
testimony, they deliberated on appellant’s guilt for only two hours and
did not request to see any of the 170 exhibits admitted into evidence.[15]  Under these circumstances, even if the admission of these two
photos was in error, the record plainly reflects that it did not
influence the jury[16] and
was harmless.  Accordingly, appellant’s
sixth point of error is overruled.

                                                    Reference to Polygraph Test

            Appellant’s seventh issue contends
the trial court erred in allowing the State to admit evidence that appellant
was offered and refused to take a polygraph examination during questioning.[17]  However, the excerpt to which appellant
objects does not indicate whether he refused to take the polygraph exam:

            Detective:      Will you take a polygraph?  You know, a lie detector test?

            Appellant:       Mm hm.

            Detective:      On this?

            Interpreter:     A test to one look if you are having the truth.

            Detective:      Will you take a polygraph?

            Appellant:       It don’t matter.

In
addition, it appears that the trial court ultimately sustained appellant’s
objection on this excerpt:

            THE COURT:            If you’ll excise the last portion of the tape and the
transcript that refers to the polygraph, leave the other one in there if you
want to and the other objection will be overruled.

Moreover,
although the excerpt was included in the portion of the tape played for the jury
and in the exhibit containing the corresponding transcript, it was a momentary
portion within several long tapes that were played for the jury, it was not
referred to again by the State, and there is no indication in the record that
the jury ever requested to listen to it again or view the corresponding
transcript.  Under these circumstances,
we can find neither error nor harm with regard to appellant’s seventh issue,
and it is overruled.

                                                              Batson
Challenge

            Appellant’s eighth issue asserts
that he was denied due process and equal protection of law when the trial court
permitted the State to peremptorily strike a potential juror, Sweeney, based on
his race after appellant asserted a Batson[18] challenge.

            The use of peremptory challenges to
exclude persons from a jury because of their race violates the Equal Protection
Clause of the Fourteenth Amendment.  Herron v. State, 86 S.W.3d 621, 630 (Tex. Crim. App. 2002). 
The procedure for asserting such a Batson
issue is: (1) the defendant presents a prima facie claim that prosecutors used
peremptory challenges to exclude venire members on the basis of race; (2) the
State offers a facially race-neutral explanation for those strikes; and (3) the
trial court determines whether the defendant has carried his burden of proving
purposeful discrimination based on the persuasiveness of the prosecutor’s
justification.  See Miller-El v. Cockrell, 123 S. Ct. 1029, 1040
(2003).  At the third step, the issue
comes down to whether the trial court finds the prosecutor’s race-neutral
reason to be credible based on such factors as the prosecutor’s demeanor, the
reasonableness of the explanation, and the extent to which it has some basis in
accepted trial strategy.  Id.

Implausible
or fantastic justifications may be found to be pretexts for purposeful
discrimination.  Id.  However, the trial court’s decision on this
issue represents a finding of fact accorded great deference and will not be
overturned unless it is clearly erroneous. 
Id. at
1041.  On appeal, the record is reviewed
in the light most favorable to the trial court’s ruling.  Adanandus v. State,
866 S.W.2d 210, 224 (Tex. Crim. App. 1993).

            In this case, at the conclusion of voir dire, appellant challenged the State’s striking of three potential
jurors, including Mr. Sweeney, as being racially motivated.  The State countered that it was striking
Sweeney because he: (1) was diabetic and insulin dependent; (2) did not have
his insulin or a test kit with him; (3) appeared to have difficulty paying
attention; and (4) had advised the court that he had attempted to get a medical
excuse due to his diabetic condition.  The State represented that it
had thus exercised a strike on him due to concern about his medical condition.

            Appellant’s
counsel did not cross-examine the prosecutor but merely argued that Sweeney’s
failure to have his medicine and test kit with him that day did not mean that
there was no other way to take care of his medical situation.  Counsel also stated that he did not notice Sweeney
misunderstanding any questions and that there were other jurors with medical
concerns as well.  Appellant did not
question, or respond to, the State’s statement regarding Sweeney’s unsuccessful
attempt to get a medical excuse.  The trial judge overruled
appellant’s challenge to the State’s use of a peremptory strike on Sweeney.

            On appeal, appellant contends that
the State’s explanation was not supported by the record.  However, he did not make this contention in
the trial court.  Moreover, the record is
clear that Sweeney was diabetic, and the State’s purported reason for striking
him out of concern for his medical condition is not implausible on its
face.  Therefore, the trial court’s
determination that the prosecutor was credible in offering this explanation
must be accorded great deference. 
Because appellant’s eighth issue does not, therefore, demonstrate that
the trial court’s ruling was clearly erroneous, it is overruled.

                                                                Phone Records

            Appellant’s ninth issue alleges that
the trial court erroneously admitted into evidence, over his hearsay objection,
an exhibit containing telephone company call records without satisfying the
requisites for the business records exception to the hearsay prohibition.[19]  Appellant contends that this error was
harmful because the State twice used these records in closing argument to link
appellant to the complainant on the day of the killing and to show that
appellant knew the complainant’s whereabouts:

            Whose number did [the complainant]
call from his cell phone that morning . . . . ? [Appellant].

            *          *          *          *

            Who would have known that [the
complainant] was gone and may have had some idea of how long he was going to be
gone, because they talked to him that day, and they knew a little bit about his
habits because they had spent so much time with him?  This defendant.

            Again, even if the phone records
were admitted in error for failing to establish the business records exception,
we find no indication that the error was harmful.  The cover letter accompanying the records is
on telephone company letterhead and is signed by its manager of court order
compliance.  There is nothing to cast
doubt on the authenticity or trustworthiness of this information.

            In addition, the testimony
pertaining to the exhibit was limited to identifying it and did not delve into
any particular entries or other information reflected in the exhibit.  Similarly, the remarks made by the State in
closing argument, above, do not reference the phone records, and there is no
indication in the record that the jury was ever shown, or requested to see,
this exhibit.  Therefore, its admission
was highly unlikely to have influenced the jury.  Accordingly, appellant’s ninth issue is
overruled, and the judgment of the trial court is affirmed.

 

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment rendered and Opinion filed
October 2, 2003.

Panel consists of Justices Yates,
Hudson, and Edelman.

Do Not Publish — Tex. R. App. P. 47.2(b).

 

 











[1]           A jury convicted appellant of
capital murder, and the trial court assessed punishment at life imprisonment. 





[2]           See Tex. R. Evid. 404(b)
(Evidence of other crimes, wrongs, or acts may be admissible in limited
circumstances provided that, upon timely request by the accused in a criminal
case, reasonable notice is given in advance of trial of intent to introduce in
the State’s case-in-chief such evidence other than that arising in the same
transaction).





[3]           See Tex. R. App. P. 44.2(b) (Any nonconstitutional error that does not affect substantial
rights must be disregarded).





[4]           Even if appellant had actual notice
of the existence of the evidence, a lack of notice by the State of its intent
to introduce the evidence, as required, could reasonably induce reliance that
the evidence would not be introduced.





[5]           See Webb v.
State, 36 S.W.3d 164, 183 (Tex. App.—Houston [14th Dist.]
2000, pet. ref’d).





[6]           As to the first prong, a
lesser-included offense: (1) is established by proof of the same or less than
all the facts required to establish the commission of the offense charged; (2)
differs from the offense charged only in the respect that a less serious injury
or risk of injury to the same person, property, or public interest suffices to
establish its commission; (3) differs from the offense charged only in the
respect that a less culpable mental state suffices to establish its commission;
or (4) consists of an attempt to commit the offense charged or an otherwise
included offense.  Tex. Code Crim.
Proc. Ann. art. 37.09 (Vernon
1981).  A lesser-included offense is thus
defined in terms of the offense charged and the facts of each particular
case.  Jacob v. State, 892 S.W.2d 905, 908 (Tex. Crim.
App. 1995).  Therefore, to determine
whether a lesser offense is included within the proof necessary to establish
the offense charged, we: (1) analyze the elements of the offense actually charged
by looking at the evidence legally required to prove guilt as defined by the
specific indictment; (2) look at the statutory elements of the offense sought
as a lesser-included offense; and then (3) ascertain whether the elements of
the lesser offense are functionally included in the elements of the charged
offense.  Id. at 907-08.





[7]           To satisfy the second prong, it is
not enough that the jury could disbelieve evidence to prove the greater
offense; there must be affirmative evidence from which a jury could rationally
acquit the defendant of the greater offense while convicting him of the
lesser.  Hampton, 109
S.W.3d at 440.  In determining whether
the second prong has been satisfied, the appeals court must consider all of the
evidence presented at trial, not merely that presented by the defendant.  See Bignall v. State, 887 S.W.2d 21, 23-24 (Tex. Crim. App. 1994). 
However, it remains the appellant’s burden to provide the appeals court
with citations to the portions of the record where evidence necessary to
sustain the appellant’s issue can be found. 
See Tex. R. App. P. 38.1(h).





[8]           See Tex. Pen. Code Ann. § 19.03(a)(2)
(Vernon 2003) (defining capital murder to include murder committed in the
course of a burglary); id. § 30.02(a)
(defining burglary).





[9]           See Tex. Pen. Code Ann. § 7.01(a), (c)
(Vernon 2003) (a person is criminally responsible as a party to an offense if
the offense is committed by his own conduct or by the conduct of another for
which he is criminally responsible; each party to an offense may be charged and
convicted without alleging whether he acted as a principal or accomplice); id. § 7.02(a)(2) (a person is criminally
responsible for an offense committed by the conduct of another if, acting with
intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids or attempts to aid the other person to commit the
offense); id. § 7.02(b) (if in the
attempt to carry out a conspiracy to commit one felony, another felony is
committed by one of the conspirators, then all conspirators are guilty of the
felony actually committed, though having no intent to commit it, if the offense
was committed in furtherance of the unlawful purpose and was one that should
have been anticipated as a result of carrying out the conspiracy).  In this case, although the jury was also
authorized to convict appellant of non-capital murder, the non-capital murder
charge does not enter into our analysis of this issue because burglary and
theft are not lesser-included offenses of non-capital murder.





[10]          See Tex. Pen. Code Ann. § 7.02 (a)(2), (b); Solomon v. State, 49 S.W.3d 356, 369 (Tex. Crim. App. 2001).





[11]          In this regard, appellant asserts
that there is evidence of the following facts: (1) he was given the stolen
property and told to stay quiet; (2) he was coerced into doing Bautista’s
bidding by Bautista’s threats; (3) he was fearful of Bautista; (4) the
complainant gave appellant the rock with which to break the back door window;
(5) Bautista broke the window to gain entry; (6) Bautista commanded appellant
to enter the complainant’s home; (7) Bautista took all the property out of the
complainant’s home; (8) appellant denied stealing the complainant’s electronic
equipment; (9) appellant denied helping Bautista carry out stolen property;
(10) the complainant called and asked appellant to bring Bautista to his home
for a talk; (11) Bautista wanted to steal from the complainant’s home but
appellant objected; (12) appellant said he did not want any trouble with
Bautista and the complainant by breaking into the complainant’s home; (13)
appellant asked Bautista why he was breaking the complainant’s window; (14)
appellant first entered the complainant’s home to find a drink, not to steal;
(15) appellant did not agree with Bautista to break the complainant’s window;
(16) Bautista ordered appellant to break the window and help open the trunk of
the car for the stolen property; and (17) a witness testified that the murder
scene evidence did not rule out the possibility that appellant and Bautista
entered the complainant’s home with the complainant’s consent prior to the
killing.





[12]          As indicated previously, the jury
was authorized to convict appellant of capital murder if it found that Bautista
committed the murder in furtherance of a conspiracy with appellant to commit
burglary and the murder was an offense that should have been anticipated as a
result of carrying out the conspiracy.  See Tex.
Pen. Code Ann. § 7.02(b).  The
jury charge essentially defined “conspiracy” as an agreement to engage in
conduct that would constitute an offense. 
See id. § 15.02(a).





[13]          See Tex. Pen. Code Ann. § 8.05(a) (Vernon
2003) (it is an affirmative defense to prosecution that the actor engaged in
the proscribed conduct because he was compelled to do so by threat of imminent
death or serious bodily injury to himself or another); id. § 8.05(c) (compulsion within the meaning of this section exists
only if the force or threat of force would render a person of reasonable
firmness incapable of resisting the pressure); id. § 8.05(d) (the defense provided by this section is unavailable
if the actor intentionally, knowingly, or recklessly placed himself in a
situation in which it was probable that he would be subjected to compulsion).





[14]          The record also reflects that
Bautista’s legal counsel was present and that he was acting under her advice in
claiming the privilege.  See Ross v. State, 486 S.W.2d 327, 328
(Tex. Crim. App. 1972) (holding that court need not
determine whether claim of privilege against self-incrimination was in good
faith where it was asserted on advice of counsel).





[15]          See Tex. Code Crim.
Proc. Ann. art. 36.25 (Vernon 1981)
(jury is to be furnished exhibits admitted into evidence (only) upon request).





[16]          See Tex. R. App. P. 44.2(b) (nonconstitutional error that does not affect substantial
rights must be disregarded); Motilla v. State,
78 S.W. 3d 352, 355 (Tex. Crim. App. 2002) (noting
that substantial rights are not affected by the erroneous admission of evidence
if, after examining the record as a whole, the appellate court has fair assurance
that the error did not influence the jury, or had but a slight effect).





[17]          The existence and results of a
polygraph examination are inadmissible for all purposes.  Tennard v. State,
802 S.W.2d 678, 683 (Tex. Crim. App. 1990).  It is also improper to ask an accused whether
he took or refused to take such an examination. 
Leach v. State, 548 S.W.2d
383, 385 (Tex. Crim. App. 1977).





[18]          See Batson
v. Kentucky, 476 U.S. 79 (1986).





[19]          See Tex. R. Evid. 803(6).