Death Opinion



 

 








IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-74,694




 


DERRICK DEWAYNE CHARLES, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM HARRIS COUNTY






 Hervey, J., delivered the opinion for a unanimous Court.



O P I N I O N



 Appellant was convicted of capital murder. The trial court sentenced appellant to death
pursuant to the jury's answers to the special issues. Appellant raises five points of error. We will
affirm.

 Appellant pled guilty before a jury to the murders of Obie, Brenda, and Myeshia Bennett. 
Myeshia was appellant's former girlfriend, Obie was her grandfather, and Brenda was her mother. 
Appellant confessed to these murders after his arrest. (1) The evidence also shows that appellant has
a history of committing criminal offenses.

 In points of error one through three, appellant complains that the trial court abused its
discretion at the punishment phase in admitting victim character evidence through Brenda's sister
when she briefly mentioned the victims' hobbies and Obie's military service. This testimony
comprises approximately two pages out of several hundred pages in the reporter's record. Appellant
made the following objections to this evidence.

 [PROSECUTION]: Okay. Judge, [Brenda's sister] is going to testify that her father's
name is Obie Bennett-was named Obie Bennett. She is going to give his date of
birth, how old he was, the fact that he was married, how many children he had, that
her mother was Obie Bennett's wife, when she died, where he worked, for how long
he worked there, what he did at his employment, that he had served in the armed
forces, that he had fought in the Korean War, why he moved into the house with
Brenda and Myeshia Bennett, and when he moved into the house with Brenda and
Myeshia Bennett.


 And it's been in evidence that he usually worked out of the garage all the time. She
will testify to what he did in the garage, what type of woodwork he did in the garage. 
And that's it. That's it on Obie Bennett.


 [DEFENSE]: Okay. Judge, we object. With respect to the family, we object, Your
Honor, to the testimony about the honorable things that we all know and can agree
that Mr. Bennett did. The participation in the armed forces, what he did for hobbies,
we believe that those are things that are outside the realm of victim impact, and have
more to do with who he was and the kind of person he was as opposed to the effect
he has on the family members not having him around. And so we think that that part
of the proffer that we have talked about should not be admitted before the jury.


 [TRIAL COURT]: Thank you. Based on the current state of the record, that's
overruled, and that will be admitted. But we don't need a lot of detail about his
military service and so forth.


 [PROSECUTION]: That's fine, Judge.


 [TRIAL COURT]: Just plain vanilla facts.


 [PROSECUTION]: That's fine. And Ms. Bennett's date of birth, how old she was
when he [sic] died, where she worked, how long she worked there-how long she
worked there, what she did at work, how many children she had, where she lived,
how long she had lived in that place in that house, and that she belonged to a trail
riding club. And her major hobby was riding horses. And that's it on Brenda
Bennett.


 [DEFENSE]: And, Your Honor, we object to the testimony about the hobbies and the
club that she belonged to. It's not proper testimony for victim impact testimony.


 [TRIAL COURT]: That's overruled. But I wouldn't want a lot of detail.


 [PROSECUTION]: Okay. Judge, on Myeshia Bennett, date of birth, how old she
was at the time of her death, where she went to school, and basically, that she also
belonged to the same club as her mother on the trail riding club. And that's it.


 [DEFENSE]: And we only object to that portion of testimony that applies to her
hobbies and belonging to the trail riding club as being improper victim impact
testimony.


 [TRIAL COURT]: It's overruled.

 

 The State argues that appellant procedurally defaulted his appellate claims because his trial
objections did not specifically raise them. Assuming without deciding, however, that appellant
preserved his appellate claims, we decide that the trial court did not abuse its discretion to admit
"victim character evidence" providing a brief "glimpse" into the victims' lives and background. See
Salazar v. State, 90 S.W.3d 330, 335-36 (Tex.Cr.App. 2002) (no abuse of discretion for trial court
to admit into evidence a "glimpse" into victim's life and background). Points of error one through
three are overruled.

 In point of error four, appellant complains that Texas' capital-murder scheme is
"unconstitutional because there is no meaningful appellate review of the special issues which
determine the infliction of the death penalty." In his brief, appellant acknowledges that this Court
has rejected the arguments he makes in point of error four in Allen v. State, 108 S.W.3d 281, 285
(Tex.Cr.App. 2003), cert. denied, 540 U.S. 1185 (2004). We decline to revisit appellant's
"meaningful appellate review" issue. Point of error four is overruled.

 In point of error five, appellant complains that "the trial court erred in accepting appellant's
plea of guilty because procedurally a defendant may not plead guilty in a capital case, unless the
State waives the death penalty." Appellant argues that a trial court is statutorily barred from
accepting a guilty plea in a death-penalty case because it is impossible to follow the procedures set
out in Article 26.14, Tex. Code Crim. Proc., which requires a jury to "assess the punishment" after
a guilty plea in a felony case. Appellant argues that it is impossible to follow these procedures in
a death-penalty case because a jury does not "assess the punishment" (but only answers special
issues) in death-penalty cases. The State claims that appellant is estopped from asserting this
appellate claim because he requested the procedure that the trial court followed.

 After appellant had pled guilty before the jury, the record reflects the following proceedings
outside the jury's presence:

 [TRIAL COURT]: We have been discussing [off the record] how we would proceed,
and since this came up kind of unexpectedly, I would think we would proceed with
the guilt phase and you can-State can present whatever evidence they wish with
regard to guilt, that then the jury will be instructed to find the defendant guilty, and
then after the finding of guilt, we will proceed with the punishment phase.


 Is there anyone who objects to that?


 [DEFENSE ATTORNEY WILLIAMS]: We do.


 [DEFENSE ATTORNEY CROWLEY]: The way to proceed-


 [WILLIAMS]: We object.


 [CROWLEY]: It's always been my experience, if I may, basically, that you put the
whole case on, evidence guilt/innocence, punishment, then they were instructed to
go back and find the defendant guilty and answer, I guess, the punishment issues.


 [TRIAL COURT]: Well, you may be right on that. Seems to me I read that
somewhere.


 [CROWLEY]: That is how we have done it in nondeath cases.


 [TRIAL COURT]: So, is it your opinion that there will only be one deliberation then?


 [WILLIAMS]: That's-that's correct, Your Honor.


 [CROWLEY]: Yes.


 [WILLIAMS]: Since we don't have a guilt/innocence phase, since this is the
punishment phase, basically.


 [PROSECUTION]: No, because we have to put on evidence of his guilt.


 [CROWLEY]: Well, you put on evidence of his guilt to inform the jury, but the plea
of guilt establishes sufficient evidence. And putting on the witnesses is to basically
inform the jury's discretion-


 [TRIAL COURT]: Seems to me that I looked at that one other time and it seems to
me that[,] contrary to my common sense, I think you're right. My recollection, they
may be right. This is what I propose, you're just going forward with guilt evidence?


 [PROSECUTION]: Uh-huh (affirmative).


 [TRIAL COURT]: But I guess it's important for opening statement, isn't it, if we're
going to do guilt and punishment phases together, then that will change opening
statements. Right? You only get one opening statement. So I have to make the
decision before we go any further. You can still present-


 [WILLIAMS]: It wouldn't change our opening statement, because we weren't going
to give one in guilt/innocence, only at the beginning of our case on punishment.


 [TRIAL COURT]: Well, probably if we're going to do it, it seems to me there is
something in the back of my mind that they are right, we do it together. So, I need
to stop and look at that before we start. And you can still proceed with all your guilt
evidence. Everything for guilt still comes in the same as before, so it won't affect
how you proceed today, but it might affect your opening statement. So, let me see
if I can figure that out. Let me go back-I left my books in the back-and take another
10-minute break and let me figure that out. Okay. Off the record.

 

 When the jury was brought back into the courtroom, the trial court instructed the jury that
it would follow the procedure that appellant had earlier requested.

 [TRIAL COURT]: Thank you. Please be seated. Members of the jury, since the
defendant has entered a plea of guilty, that will change the procedure for conducting
the trial somewhat. There will only be one phase of the trial and one deliberation. 
And the parties, both the State and defense, will be allowed to present evidence
relating to guilt and also relating to punishment.


 So I wanted to explain that things would be a little different than we anticipated when
the procedure was discussed with you before. Mr. Cotton, will you be making an
opening statement?


 The record supports the State's claim that the trial court followed the procedure that appellant
requested. Appellant is, therefore, estopped from complaining about the procedure. See Prystash
v. State, 3 S.W.3d 522, 530-32 (Tex.Cr.App. 1999), cert. denied, 529 U.S. 1102 (2000) (party cannot
invite error and then complain about it on appeal). In addition, Article 26.14 does not apply to death-penalty cases because a guilty plea to the jury in a death-penalty case is sufficient to trigger the
mandatory procedures set out in Article 37.071, Tex. Code Crim. Proc., which were followed in
this case. See Williams v. State, 674 S.W.2d 315, 319 (Tex.Cr.App. 1984). Point of error five is
overruled.

 The judgment of the trial court is affirmed.

 Hervey, J.

Delivered: February 2, 2005

Do Not Publish
1. The record reflects that the victims lived together. Appellant came over to the victims'
home and murdered Obie by strangling and beating him while Brenda and Myeshia were at church. 
When they returned home from church, appellant, who was waiting for them, bound them with
electrical cord. Appellant killed Myeshia by beating her with a speaker and then dropping a
television on her until she was dead. Appellant unsuccessfully attempted to electrocute Brenda in
a bathtub. He then sexually assaulted her with a plunger and then strangled her.