

## NUMBER 13-10-00329-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

LARRY RAMOS,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

### On appeal from the 319th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Vela, and Perkes**
**Memorandum Opinion by Justice Benavides**

A Nueces County jury convicted appellant Larry Ramos for the aggravated robbery of O.L., a first-degree felony, and sentenced him to eight years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). By two issues, Ramos appeals his conviction and

asserts that: (1) the trial court erred in denying one of his challenges for cause during jury voir dire; and (2) the trial court erred in denying a jury instruction for a lesser-included offense. We affirm.

## I.  BACKGROUND

Sometime in late 2009, Larry Ramos befriended co-defendant Jeremy Walker at Clem's Marina Pier, as they both shared a common hobby of fishing. Ramos testified that around midnight of November 30, 2009, after the two went fishing, Walker invited Ramos to a "get together" later that morning at a home located in Flour Bluff, Texas owned by O.L. Ramos stated that he was under the impression that the "get together" was a party where there would be beer and marihuana. Ramos went home, and Walker later picked him up a little after 3 a.m. to head to O.L.'s home. Walker and O.L. knew each other previously through the online social network, MySpace, while Ramos did not know O.L. Two different and separate accounts of what happened next were presented to the jury.

O.L. testified that around 3:30 a.m. on the morning of November 30, 2009, Walker called O.L. to ask if he could drive to O.L.'s house and sell him a camera. O.L. agreed to allow Walker to come over, and when Walker arrived, he invited Walker inside. At this point, O.L. was under the impression that Walker arrived alone. When Walker entered O.L.'s home, he and Walker made small talk, and Walker stated that he needed to retrieve the camera from inside of his car. Walker then exited O.L.'s house and O.L. waited for him to return. Walker returned to O.L.'s front door with Ramos in tow. O.L. then testified that Ramos entered the home, flashed a firearm at O.L., pointed it to O.L.'s head, and ordered him to get on his knees. O.L. said that Walker and Ramos then

2

separated in the house. Walker entered O.L.'s bedroom, while Ramos confined O.L. by gunpoint in the "T.V. room." O.L. stated that while Walker ransacked O.L.'s bedroom, Ramos went through and took his belongings in the kitchen as well as other items inside his buffet table in the front room of the house. Walker and Ramos eventually left O.L.'s home with a box full of items, including a cellular phone and laptop. During the entire ordeal, O.L. stated that he feared for his life. The State presented additional evidence from Corpus Christi Police Department fingerprint examiner, Marcia Parker, who testified that she matched Ramos's right middle fingerprint with a sample taken at O.L.'s residence off of a marble lamp.

Ramos testified to a different set of facts. According to Ramos, he and Walker arrived at O.L.'s residence, Walker entered O.L.'s home, and Ramos waited inside the vehicle. About five minutes later, Walker returned to the car and invited Ramos inside the house. When he entered the home, Ramos testified that Walker and O.L. went to the bedroom, leaving Ramos alone in O.L.'s living room. According to Ramos, Walker and O.L. later emerged from the bedroom and Walker had a laptop in his hand. Ramos said that at no time did he or Walker possess a firearm. A short time later, Ramos testified that he and Walker left O.L.'s residence and Walker drove Ramos back home without incident.

Two hours following the incident, O.L. called the police and reported the crime. Investigators helped O.L. identify Walker through his online MySpace account, and later, O.L. identified Ramos in a photo lineup. Ramos was subsequently arrested and charged with aggravated robbery. After a three-day trial, Ramos was convicted of the charged offense and sentenced to eight years' imprisonment. This appeal ensued.

3

## II. CHALLENGE FOR CAUSE

In his first issue, Ramos contends that the trial court erred when it denied his challenge for cause of veniremember number 37, Kimberly Gonzalez, who was employed by the Nueces County District Attorney's Office.

### A.    Standard of Review

"We review a trial court's ruling on a challenge for cause with 'considerable deference' because the trial court is in the best position to evaluate the veniremember's demeanor and responses." *Newbury v. State*, 135 S.W.3d 22, 32 (Tex. Crim. App. 2004); *see Colburn v. State*, 966 S.W.2d 511, 517 (Tex. Crim. App. 1998) (en banc) (citing *Wainwright v. Witt*, 469 U.S. 412, 429 (1985)).   In our review, we examine the total voir dire record in context.   *See Cardenas v. State*, 305 S.W.3d 773, 776 (Tex. App.—Fort Worth 2009, pet. granted), *aff'd*, 325 S.W.3d 179, 189 (Tex. Crim. App. 2010).   We will reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident.   *See Newbury*, 135 S.W.3d at 32.

### B.    Discussion

Ramos's argument on this issue is two-fold.   First, Ramos asserts that his challenge for cause should have been granted because the veniremember at issue was an employee of the prosecutor's office, and as a result, had a "vested interest" in the case.   Second, Ramos argues that because his challenge for cause was denied, he used his peremptory strike on the veniremember at issue and was thus entitled to an additional peremptory strike.   The State counters Ramos's issue on appeal by asserting that he failed to properly preserve error and his issue should be overruled.   Because

4

preservation of error is a prerequisite for appellate review, we will first address whether Ramos properly preserved error on appeal. *See* TEX. R. APP. P. 33.1(a).

In order to preserve error on a trial court's denial of a challenge for cause, Ramos must show that he: (1) asserted a clear and specific challenge for cause; (2) used a peremptory strike on the complained-of veniremember; (3) exhausted his peremptory strikes; (4) requested additional peremptory strikes; (5) identified an objectionable juror; and (6) claimed that he would have struck the objectionable juror with a peremptory strike if he had one to use. *See Allen v. State*, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003) (en banc) (citing *Nelson v. State*, 848 S.W.2d 126, 134 (Tex. Crim. App. 1992)).

In this case, Ramos asserted a clear and specific challenge for cause of Juror number 37, which was denied. As a result, Ramos further made it known to the trial court that he was forced to use a peremptory strike on the complained of veniremember, and exhausted all of his peremptory strikes. The voir dire record is void, however, of Ramos's identification of an objectionable juror who was empanelled or claims that he would have struck that objectionable juror with a peremptory strike if he had one to use. Therefore, we conclude that error was not preserved. *See Allen*, 108 S.W.3d at 282. Ramos's first issue is overruled.

## III. LESSER-INCLUDED OFFENSE OF ROBBERY

In his second issue, Ramos contends that the trial court erred in refusing to grant a jury instruction on the lesser-included offense of robbery.

### A. Standard of Review

In *Hall v. State*, the Texas Court of Criminal Appeals detailed a two-step analysis we must undertake to determine whether to instruct the jury on a lesser-included offense:

The first step in the lesser-included-offense analysis, determining whether an offense is a lesser-included offense of the alleged offense, is a question of law. It does not depend on the evidence to be produced at the trial. It may be, and to provide notice to the defendant must be, capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense.

The evidence adduced at trial should remain an important part of the court's decision whether to charge the jury on lesser-included offenses. The second step in the analysis should ask whether there is evidence that supports giving the instruction to the jury. "A defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. In other words, the evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense."

225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007) (footnotes and citations omitted).

## B. Discussion

In applying the first step of the *Hall* analysis, we consider the statutory elements of aggravated robbery as they were modified to the particular allegations in Ramos's indictment:

(1) Ramos;

(2) while in the course of committing theft of property and with intent to obtain or maintain control of said property;

(3) intentionally or knowingly threatened or placed O.L. in fear of imminent bodily injury or death;

(4) through use or exhibition of a deadly weapon, to wit: a firearm.

We next compare the elements of the lesser-included offense of robbery that could be included in the offense:

(1) Ramos;

6

(2) While in the course of committing theft and with intent to obtain or maintain control of property;

(3) Intentionally or knowingly threatened or placed O.L. in fear of imminent bodily injury or death.

*See* TEX. PENAL CODE ANN. § 29.02 (West 2011).

We next determine whether the lesser-included offense, under article 37.09 of the code of criminal procedure, is established by proof of the same or less than all the facts required to establish the commission of the offense charged. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006); *Hall*, 225 S.W.3d at 536. Here, we conclude that it does. The facts to prove robbery include all of the elements of the charged offense of aggravated robbery, except the inclusion of the use or exhibition of a firearm. *See Penaloza v. State*, 349 S.W.3d 709, 711 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd.). Accordingly, we move to step two.

In applying the second step under *Hall*, we examine whether the evidence adduced at trial supports an instruction of the lesser-included offense. *Id.* To advance his argument on this issue, Ramos asserts that evidence was elicited through testimony at trial from Ramos and his girlfriend, Amanda Hernandez, that (1) Ramos did not own a firearm; and (2) Ramos did not possess a firearm at O.L.'s home. Ramos's evidence contrasts with O.L.'s testimony that Ramos pointed a gun to O.L.'s head throughout the ordeal and ordered him to comply with his instructions. Here, we have nothing more than a mere denial by Ramos that he committed the charged offense. "[A]nytime a defendant denies the commission of an offense, a charge on a lesser-included offense will not be warranted." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994) (en banc) (citing *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985). A

7

defendant's denial, without more evidence showing that a defendant is guilty only of a lesser-included offense, will not support an instruction of a lesser-included offense. *See Bignall*, 887 S.W.2d at 24. Here, Hernandez's testimony was that Ramos did not own a firearm. By itself, the evidence does not affirmatively offer that Ramos did not use a firearm on November 30, 2009 to further the robbery. The only remaining testimony presented, aside from Ramos's own denial, was O.L.'s unequivocal testimony that Ramos pointed a firearm to his head. Accordingly, Ramos was not entitled under *Hall* to an instruction of the lesser-included offense of robbery. *See Penaloza*, 349 S.W.3d at 713. Ramos's second issue is overruled.

## IV. CONCLUSION

Having overruled Ramos's two issues, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of April, 2012.

8