IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,401






JESSE JOE HERNANDEZ, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM DALLAS COUNTY






 Cochran, J., delivered the opinion of the Court in which Keller, P.J.,
Price, Womack, Johnson, Keasler, Hervey and Holcomb, JJ., joined. Meyers,
J., concurred in point of error number six and otherwise joined the opinion of the court.


O P I N I O N



 In July of 2001, appellant was convicted of the capital murder of Karlos Borja, a
child under the age of six. Tex. Pen. Code § 19.03(a)(8). Pursuant to the jury's answers
to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, §§ 2(b)
and 2(e), the trial judge sentenced appellant to death. Art. 37.071 § 2(g). (1) Direct appeal to
this Court is automatic. Art. 37.071 § 2(h). Appellant raises fourteen points of error. We
affirm.

 In his first point of error, appellant claims the trial court erred in admitting a
custodial statement in violation of Article 38.22 §3(c). Specifically, he claims his oral
statement that he "may have used" a flashlight to kill Karlos should not have been admitted
at the guilt or innocence phase of trial because "the record does not support a finding that
the statement was found to be true and conduced to establish appellant's guilt."

 When police began investigating the assault on Karlos, (2) they went to appellant's
home where he and his wife had been babysitting Misty Leverett's ten-month-old son,
Karlos, and Karlos' four-year-old sister Melodi. They discovered that appellant had some
outstanding warrants, arrested him, and transported him to the police station. While there,
Detective Warren Breedlove spoke with appellant to obtain some general information and
inquire about the injuries to the children. At a pre-trial hearing regarding the voluntariness
of appellant's written statement, Breedlove testified that appellant was not a suspect at that
time so he was not informed of his Miranda (3) rights. Appellant gave an affidavit denying
any knowledge of what happened to Karlos and Melodi and was later transported to the
county jail. After police spoke with Karlos' doctor and with Melodi, appellant became a
suspect in the assaults. Breedlove met with appellant, read him his Miranda warnings and
began an interview. Over approximately an hour and a half, appellant repeatedly admitted
and then denied striking the children. Breedlove asked appellant about a flashlight found at
the scene and appellant admitted he may have hit Karlos with the flashlight. 

 Detective Daniel Lesher took over the interview after appellant became upset with
Breedlove. After talking with Lesher for approximately thirty minutes, appellant asked for
an attorney and Lesher stopped the interview. A few minutes later, when Lesher entered the
interrogation room to take pictures of appellant's hand, appellant stated he wanted to
resume the interview. Lesher replied that he could not resume the interview because
appellant asked for an attorney. Lesher then consulted with Breedlove and Detective Jesus
Trevino because he was unsure of what to do. Lesher resumed the interview after Trevino
talked with appellant and determined appellant wanted to speak to Lesher without an
attorney. Lesher asked appellant to make a written, voluntary statement. After speaking
with his wife and using the restroom, appellant agreed. In his statement, appellant admitted
hitting Karlos and Melodi because they cried for no reason, because he was upset over
recently losing his grandmother, and because he had a bad day with his wife. He added that
he was sorry for hitting them. There was nothing in appellant's written statement about
hitting Karlos with a flashlight.

 At a pre-trial hearing, the trial court found appellant's written statement was
voluntarily given, and therefore, admissible. Breedlove testified to the contents of
appellant's statement. Later in the trial, Breedlove was recalled to testify about the results
of his investigation in the context of the indictment. Specifically, he testified that, other
than appellant's hands and a flashlight found at the scene, he was unable to identify any
other means by which appellant injured Karlos.

 On cross-examination, appellant asked Breedlove numerous questions about what
was said during the interrogation but was not included in appellant's written statement. (4) 
After appellant concluded his cross-examination the State, outside the presence of the jury,
asked the trial court to allow Breedlove to testify that appellant not only told him he hit the
children, but that he may have hit Karlos with a flashlight. The State argued this testimony
was admissible under Texas Rule of Evidence 107, "the Rule of Optional Completeness." 
There was a lengthy discussion at the bench concerning the extent of appellant's cross-examination and the degree to which appellant's questioning had left a false impression
about Breedlove's interrogation, the notes of that interrogation, and appellant's oral
statements. (5) The trial court then ruled that the State could present this testimony. 
Appellant objected at trial to the State's theory that Rule 107 permitted the admission of
this testimony, but he does not address this theory of admissibility on appeal.

 This Court reviews the trial court's ruling under an abuse of discretion standard and
will not reverse the trial court's ruling unless it falls outside the zone of reasonable
disagreement. Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim. App. 2001); Moreno v.
State, 22 S.W.3d 482, 487 (Tex. Crim. App. 1999). Rule 107 states:

When part of an act, declaration, conversation, writing or recorded statement
is given in evidence by one party, the whole on the same subject may be
inquired into by the other, and any other act, declaration, writing or recorded
statement which is necessary to make it fully understood or to explain the
same may also be given in evidence, as when a letter is read, all letters on the
same subject between the same parties may be given. "Writing or recorded
statement" includes depositions. 

 Appellant asked Breedlove to tell the jury about portions of his custodial
interrogation with appellant and appellant's oral responses. Accordingly, the State was
entitled to ask Breedlove about other portions of that same interrogation which were
necessary for the jury to fully understand the conversation as a whole. Tex. R. Evid. 107;
Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000). Thus, the trial court did not
abuse its discretion in allowing Detective Breedlove to testify that appellant stated he may
have used a flashlight to strike Karlos. (6) Appellant's first point of error is overruled. 

 In his second point of error, appellant claims the trial court erred in excluding the
testimony of Terry Garza from the punishment phase of trial. He claims he should have
been allowed to present Garza's testimony to rebut the victim-impact testimony of the
victim's mother, Misty Leverett, presented at punishment. Contrary to appellant's
assertion, the record reflects that Garza's testimony was not offered at punishment, but
rather at guilt-innocence. (7) The record further reflects that Leverett did not testify at
punishment. Nonetheless, we conclude that the trial court did not abuse its discretion in
excluding Ms. Garza's testimony because Misti Leverett did not offer any victim impact
testimony during the guilt stage. Although she cried during her testimony when she was
shown pictures of Karlos and displayed some emotion during cross-examination, she did
not provide any "victim impact" or "victim character" evidence. Appellant fails to point to
any specific testimony by Leverett which might conceivably be construed as such. 
Furthermore, the fact that Leverett was not openly emotional when she met with her
probation officer shortly after Karlos' death is not relevant to any material issue at
guilt/innocence or punishment. The trial court's ruling was within the zone of reasonable
disagreement. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). 
Appellant's second point of error is overruled.

 In his third point of error, appellant claims the trial court erred by admitting
photographs of Melodi's injuries because they were not relevant, under Texas Rule of
Evidence 402, to the issue of Karlos's death. This Court reviews the trial court's ruling
under an abuse of discretion standard and will not reverse that ruling unless it falls outside
the zone of reasonable disagreement. Salazar, 38 S.W.3d at 151; Moreno, 22 S.W.3d at
487. 

 Same transaction contextual evidence is admissible when "several crimes are
intermixed, or blended with one another, or connected so that they form an indivisible
criminal transaction, and full proof by testimony, ... of any one of them cannot be given
without showing the others." Wyatt v. State, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000)
(quoting Rogers v. State, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). Furthermore, it is
well settled that the jury is entitled to know all relevant surrounding facts and
circumstances because an offense is not tried in a vacuum." Moreno v. State, 721 S.W.2d
295, 301 (Tex. Crim. App. 1986). 

 The evidence at trial showed that at the time Karlos and Melodi were assaulted,
Misty Leverett, Karlos, and Melodi, were living with appellant, his wife Mary Rojas, their
young son, Joshua, and Gilbert Gomez. On the day of the assaults, Leverett went to work
and left the children in the care of appellant and Rojas. Rojas testified that after Leverett
left for work around noon, she stayed home with the children while appellant and Gomez
left to run errands. When appellant and Gomez returned about two hours later, Rojas left
for her sister-in-law's house and was gone approximately thirty to forty-five minutes. 
Rojas testified that when she got home, she heard appellant screaming at Joshua. She
picked him up and took him to the room she shared with appellant. Rojas asked where
Karlos and Melodi were, and appellant replied that they were sleeping in the next room. 
Rojas then went into her room and relaxed with Joshua. Later, when she heard appellant
preparing a bottle, she told appellant she was going to go into the room where Karlos and
Melodi were sleeping. Appellant instructed Rojas not to enter the room for fear she would
wake them up. Despite having seen blood stains on appellant's shirt, Rojas waited until
Leverett got home from work to check on the children. 

 Leverett testified that when she arrived home, she went into the dark room (8) she
shared with her children and found Melodi complaining that her head hurt. Rojas and
Leverett took Melodi out into the kitchen and saw that her head was swollen with "red
splotches." Alarmed, Leverett decided to take Melodi to the hospital. After they left,
Rojas checked on Karlos and noticed his lips were swollen. She determined Karlos was
badly hurt and took Karlos and Joshua down the street to her sister-in-law's house to call an
ambulance. 

 When Leverett and Melodi arrived at the hospital, hospital workers asked Leverett if
she had any other children. When she replied that she did, the hospital workers instructed
her to return home and get her son immediately. Leverett testified that when she returned
home, appellant was alone and he told her that Karlos was at his sister's house. Leverett
asked appellant to take her there but he refused. Moments later, police arrived and
informed Leverett that Karlos had been rushed to Children's Hospital by ambulance. 

 In addition to this evidence, appellant stated in his voluntary written statement that
he was babysitting Melodi and Karlos and "they were being very bad by crying a lot for
nothing." Appellant continued that he "just exploded and hit them with the back of my hand
not realizing I was hurting them[.]" 

 The assaults on Melodi and Karlos are so connected in time and space that they form
one indivisible criminal transaction. To admit evidence of one without the other would be
extremely difficult, to say the least. Because evidence of Melodi's injuries was relevant
under Rule 402, we cannot say the trial court abused its discretion in finding the
photographs of her injuries relevant as well. See Martin v. State, 475 S.W.2d 265, 267
(Tex. Crim. App. 1972) ("if a photograph is competent, material and relevant to the issue on
trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse
the passions of the jury, unless it is offered solely to inflame the minds of the jury").
Appellant's third point of error is overruled.

 In his fourth point of error, appellant contends the trial court erred by admitting the
photographs of Melodi's injuries because their probative value was outweighed by the
danger of unfair prejudice in violation of Rule of Evidence 403. 

 The decision to admit photographs into evidence is within the discretion of the trial
court and will not be disturbed absent an abuse of that discretion. Salazar, 38 S.W.3d at
151; Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). When considering
the prejudicial nature of photographs, factors for this Court to consider are the number of
exhibits offered, their gruesomeness, their detail, their size, whether they are in color or
black and white, and whether they are close-ups. Long v. State, 823 S.W.2d 259, 272 (Tex.
Crim. App. 1991). 

 Appellant objected to the admission of six photos depicting Melodi's injuires. The
photographs appear in the record as 8" x 10" black and white photocopies. (9) State's Exhibit
33 depicts Melodi in a hospital bed with a bandage on her left hand and an ice pack on her
forehead. State's Exhibit 34 is a photo of bruising on Melodi's thighs. State's Exhibit 35 is
a photo which shows bruising on the right side of Melodi's face and depicts her sucking her
thumb with bandages on her hand. State's Exhibit 36 is a photo of Melodi's face which
shows severe bruising on the left side. State's Exhibit 37 is a photo of the left side of
Melodi's face and shows a large swollen area on her forehead, beside which someone is
holding a tape measure to scale to indicate the size of that swelling. State's Exhibit 38 is a
photo of the right side of Melodi's face which appears to depict a separate swollen area on
her forehead. 

 As discussed above, the photographs are relevant as same transaction contextual
evidence. Wyatt, 23 S.W.3d at 25. Thus, under Rule 403, they should have been excluded
only if their probative value was "substantially outweighed" by one of the specific
counterfactors listed in rule 403-here, the danger of unfair prejudice. These exhibits were
admitted through Misty Leverett's testimony in which she related that Melodi did not have
any bruises or swelling when Leverett left for work the morning Karlos and Melodi were
assaulted. Rojas also testified regarding the photographs and stated that Melodi did not
have injuries consistent with those depicted in the photographs when Rojas left Melodi and
Karlos alone with appellant on the day of the assaults. Thus, the photos are probative to
show it was appellant who inflicted the children's serious injuries. Further, they serve to
impeach appellant's statement that he did not realize he was hurting the two children and
are, therefore, probative of appellant's knowledge and intent. Most importantly, the
photographs directly rebut appellant's defensive theory that he only hit the two children
with the back of his hand. The jurors could determine for themselves whether the injuries
depicted in the photographs of Karlos and Melodi were consistent with having been hit with
the back on one's hand or whether they were consistent with being struck with a hard object,
such as a flashlight. Tex. Pen. Code § 19.03. 

 We turn next to the issue of unfair prejudice. None of the photographs of Melodi's
injuries are inflammatory, gruesome in nature, or cumulative. While some of them are
close-up, they are not especially detailed or large in size. The pictures of four-year-old
Melodi's bruises, cuts, swollen areas and black eye are mild indeed in comparison to the
photographs of the ten-month-old Karlos. Thus, we conclude that their limited prejudicial
effect was not unfair and it did not substantially outweigh their probative value and the trial
court did not err in admitting them at trial. Appellant's fourth point of error is overruled.

 In his fifth point of error, appellant claims the trial court erred by admitting autopsy
photos of Karlos' body because their probative value was outweighed by the danger of
unfair prejudice in violation of Rule of Evidence 403. Appellant objected to thirteen
photographs. (10) Dr. Jill Urban, a medical examiner, testified to the extent of Karlos' injuries
using the autopsy photographs. Urban testified that State's Exhibit 57 is a photograph of
Karlos' body before she began the autopsy. State's Exhibits 58 and 59 show injuries to
Karlos' mouth. Specifically, Urban explained that Karlos' lip had been torn from his gum. 
State's Exhibits 60-63 are photos of Karlos' brain from different angles which Urban used
to describe the different blunt-force injuries Karlos suffered. Karlos' skull was cut open
and the skin on his head peeled back in order to take these photos. State's Exhibit 64
depicts the top of Karlos' skull which was removed from his body and shows a large
fracture. State's Exhibit 65 depicts the left side of Karlos' brain where Urban explained a
large subdural hemorrhage had occurred. State's Exhibits 66 and 67 show subarachnoid
hemorrhaging of Karlos' brain. State's Exhibits 68 and 69 show hemorrhaging around and
in Karlos' eyes. In order to take these photos, the medical examiner cut Karlos' eyes in
half and then backlit them. Urban explained that hemorrhaging of the eyes indicates severe
head trauma. 

 State's Exhibit 57 is not overly gruesome, is not cumulative, and is not especially
detailed or close up. Thus, its prejudicial effect did not substantially outweigh its probative
value and the trial court did not err in admitting it. Long, 823 S.W.2d at 272.

 On the other hand, State's Exhibits 58-69 are all close-up, highly graphic, and
extremely gruesome, rendering them highly prejudicial. Having determined these photos
are highly prejudicial, we turn to the issue of whether, despite their gruesomeness, the
photos are admissible. In Rojas v. State, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998), and
Santellan v. State, 939 S.W.2d 155 (Tex. Crim. App. 1997), this Court held that autopsy
photographs are generally admissible unless they depict mutilation of the victim caused by
the autopsy itself. The main concern in these cases was that the jury might attribute certain
injuries caused by the autopsy to the defendant, which would unfairly prejudice the
defendant's case. See Rojas, 986 S.W.2d at 249 (holding autopsy photographs admissible
because the depicted gunshot wounds and trauma to the pelvic area were a result of
defendant's actions, not the performance of the autopsy); Santellan, 939 S.W.2d at 173
(holding that a change rendered as part of the autopsy process which is of minor
significance does not prevent the admission of the picture when the disturbing nature of the
photograph is due primarily to the injuries caused by defendant). 

 Photographs depicting "mutilation" by the medical examiner may still be admissible,
and therefore excepted from the general prohibition, when the resulting picture (such as a
photo of an organ that has been removed from the body) shows bruising or other damage
that is attributable to the defendant's actions, but was not visible externally, thereby making
the photograph highly relevant to the manner of death. Ripkowski v. State, 61 S.W.3d 378,
392-93 (Tex. Crim. App. 2001), cert. denied, 123 S.Ct. 2274 (2003); see also Salazar, 38
S.W.3d at 150-53. 

 State's Exhibits 58-69 present just such an exception to the general prohibition
against photographs depicting mutilation. Although some bruising could be seen on the
external surface of Karlos' body, it was not until the medical examiner opened his skull that
the blunt force injuries appellant caused could be seen. These particular photographs
visually depicted and reinforced the State's theory that Karlos' head injuries could have
been caused only by the use of intentional or knowing force.

 Although extremely graphic and explicit, State's Exhibits 58-69 were highly
probative of the manner of Karlos' death and the extent of his injuries, they were helpful
demonstrative aids as the medical examiner described her findings and conclusions
concerning the manner of Karlos' death, and, although prejudicial, they were not unfairly
prejudicial. Thus, the trial judge did not abuse his discretion in allowing the admission of
these exhibits. Appellant's fifth point of error is overruled. 

 In his sixth point of error, appellant contends fundamental error occurred when the
prosecutor argued the following to the jury:

Look, we haven't come in here and made promises that we can't back up. We
presented evidence to you that shows him guilty. We haven't come in with
innuendo. You know, where is this proof about him striking something over
in the jail causing him to swell his hand? Where is that proof there? You
haven't heard it from any witness. We're not the ones coming in here making
these promises we can't back up. 


 Appellant claims the prosecutor's argument was an improper comment on
appellant's failure to testify. Appellant did not object at trial to the prosecutor's argument. 
He has forfeited this claim by failing to object at trial and therefore may not raise this
argument for the first time on appeal. Saldano v. State, 70 S.W.3d 873, 887-89 (Tex.
Crim. App. 2002); Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). 
Appellant's sixth point of error is overruled. 

 In his seventh point of error, appellant argues the trial court erred by denying his
request to include an instruction in the jury charge which explained that before appellant
could be released on parole, the Board of Pardons and Paroles must receive a risk
assessment from the Texas Department of Criminal Justice and, after reviewing the
assessment, two-thirds of the board must vote for his release to parole. Appellant relies on
Simmons v. South Carolina, 512 U.S. 154, 163-64 (1994). Appellant is not entitled to
such an instruction. This Court has repeatedly held that parole eligibility is not a proper
consideration for the jury in a capital punishment hearing. See Feldman v. State, 71
S.W.3d 738, 757 (Tex. Crim. App. 2002). Thus, appellant was not constitutionally entitled
to any jury instruction on parole law. Nonetheless, the trial court gave the statutory
instruction regarding parole, Art. 37.071 § 2(e)(b), thus appellant's interests were
protected. Appellant's seventh point of error is overruled.

 In his eighth point of error, appellant claims the mitigation special issue is infirm
under the Due Process Clause of the United States Constitution because it omits a burden
of proof. Specifically, he claims that under Apprendi v. New Jersey, 530 U.S. 466 (2000),
the State should bear the burden of proving the absence of mitigating circumstances beyond
a reasonable doubt. Appellant's claim has been previously raised and rejected. Resendiz v.
State, 112 S.W.3d 541, 549-50 (Tex. Crim. App. 2003); Allen v. State, 108 S.W.3d 281,
285 (Tex. Crim. App. 2003). Appellant's eighth point of error is overruled.

 In his ninth point of error, appellant contends the trial court erred by failing to
define the word "probability" and the phrases "criminal acts of violence" and "continuing
threat to society" in the jury charge. We have repeatedly rejected identical claims. 
Feldman v. State, 71 S.W.3d 738, 757 (Tex. Crim. App. 2002); Chamberlain v. State, 998
S.W.2d 230, 238 (Tex. Crim. App. 1999); McDuff v. State, 939 S.W.2d 607, 620 (Tex.
Crim. App. 1997)). Appellant's ninth point of error is overruled.

 In his tenth point of error, appellant argues the 12-10 rule of Article 37.071 which
requires ten votes for the jury to return a negative answer to the first or second special
issue and at least ten votes for the jury to return an affirmative answer to the third special
issue violates due process and the Eighth and Fourteenth Amendments to the United States
Constitution. We have repeatedly rejected identical claims. Johnson v. State, 68 S.W.3d
644, 656 (Tex. Crim. App. 2002); Wright v. State, 28 S.W.3d 526, 537 (Tex. Crim. App.
2000); Chamberlain, 998 S.W.2d at 238. Appellant's tenth point of error is overruled. 

 In his eleventh and twelfth points of error appellant contends the Texas death penalty
scheme is unconstitutional under the Fifth, Eighth, and Fourteenth Amendments to the
United States Constitution and Article I §§ 13 and 19 of the Texas Constitution because of
the impossibility of simultaneously restricting the jury's discretion to impose the death
penalty while also allowing the jury unlimited discretion to consider all evidence mitigating
against the imposition of the death penalty. Appellant relies solely on Justice Blackmun's
dissent from the United States Supreme Court's denial of certiorari in Callins v. Collins,
510 U.S. 1141 (1994) (Blackmun, J., dissenting). We have addressed and rejected this
identical claim. Murphy v. State, 112 S.W.3d 592, 607 (Tex. Crim. App. 2003). 
Appellant's eleventh and twelfth points of error are overruled. 

 In his thirteenth and fourteenth points of error, appellant claims the cumulative
effect of the trial court's errors denied him a fair trial in violation of the Fifth and
Fourteenth Amendments to the United States Constitution and Article I § 19 of the Texas
Constitution. Appellant has failed to show any error, therefore he has failed to show
cumulative errors which denied him a fair trial. Appellant's thirteenth and fourteenth points
of error are overruled.

 We affirm the judgment of the trial court.

Cochran, J.

Delivered: May 26, 2004.

Do Not Publish
1. Unless otherwise indicated, all references to articles refer to the Texas Code of Criminal
Procedure.
2. When police began their investigation, Karlos was still alive. He died approximately one
week later.
3. Miranda v. Arizona, 384 U.S. 436 (1966).
4. Appellant's interrogation was not recorded.
5. After reviewing a written transcript of appellant's cross-examination of Breedlove, the trial
court concluded that "there was sufficient questions and answers regarding [appellant's] having
admitted doing things and denying doing things where it opened up further admissions by him that were
not included in the [written] statement."
6. Commendably, the trial court listened to Breedlove's proposed testimony outside the
presence of the jury, and specified precisely for the parties and the witness what further evidence would
and would not be admissible under Rule 107.
7. The excluded testimony simply recounted Ms. Garza's impressions of Misty Leverett's flat
affect and lack of emotional reaction when she reported to Ms. Garza, her probation officer, shortly
after Karlos' death.
8. Leverett testified that the room was dark because the light bulbs in the light fixture were
burned out.
9. Although the photographs appear as black and white photocopies in the record, their quality
is sufficient to address this point of error.
10. Again, the photographs appear as black and white photocopies in the record, but their quality
is sufficient to address this point of error.