**Robert Lynn GONZALEZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–98–01289–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 25, 2000.

David Cunningham, Houston, for Appellant.

William J. Delmore, III, John B. Holmes, Houston, for State.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and SMITH.*

## OPINION

MICHAEL H. SCHNEIDER, Chief Justice.

A jury convicted appellant of murder and assessed punishment at confinement for life. Appellant raises three issues on appeal: 1) Did the district court abuse its discretion in finding that appellant's penitential statement was not privileged? 2) Did the district court err in overruling appellant's motion to suppress his written statement to law enforcement as such statement was improperly induced by a promise? 3) Did the district court err in denying appellant's special requested instruction to the jury regarding the application of Texas Rule of Evidence 505? We affirm.

## BACKGROUND FACTS

Appellant and his girlfriend traveled from California to Texas hoping to find work. After they arrived in Texas, the couple stayed in a hotel while appellant's girlfriend worked as a topless dancer in Houston. During this time, appellant met Stacy Ellis at a bar. The two men struck up a friendship and, one week later, Ellis invited appellant and his girlfriend to stay at Ellis's apartment. They accepted his invitation and moved to his apartment.

Shortly thereafter, on April 7, 1997, a neighbor went to check on Ellis because he had not reported to work for several days. The neighbor found Ellis's body covered by a comforter on the kitchen floor. When officers responded to the scene, they discovered Ellis with his skull shattered from, as the autopsy would later reveal, 13 blows to the head. Bloodstains were found throughout the kitchen, down the hallway, in the bathroom, and in the bedroom.

Police later arrested appellant and his girlfriend, whom he had since married, in California on June 5, 1997. The two were taken separately to a local police station where appellant gave a statement to police. In his statement, appellant admitted to killing Ellis, but claimed Ellis was attempting to rape his girlfriend and the killing was done in her defense. Appellant stated that after Ellis was dead, he and his girlfriend packed their belongings and left the scene. The couple, driving her car and Ellis's truck, returned to California after making stops in Brownsville and Mexico.

During the trial, appellant's wife testified that appellant's statement was fabricated. She testified that appellant attacked Ellis without provocation. When she was impeached with prior inconsistent statements about the attempted rape, she explained that it was a story that she and appellant had made up.

## ISSUE NUMBER ONE: TEXAS RULE OF EVIDENCE 505

During the trial, to rebut appellant's testimony that he killed Ellis because Ellis was attempting to rape his girlfriend, the State called Steven Folgheraiter, a pastor from California, to testify. After a hearing

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals First District of Tex-

as at Houston, participating by assignment.

outside the presence of the jury, the district court determined, without explanation, that section 1032 of the California Evidence Code should apply in this case rather than Texas Rule of Evidence 505; that the communication between the pastor and appellant was not privileged; and that Folgheraiter should be allowed to testify before the jury.

Folgheraiter testified that appellant's mother asked Folgheraiter to meet with appellant to counsel him spiritually. During the session, appellant announced he had done something "really bad." Folgheraiter then testified that he warned appellant there were certain things Folgheraiter needed the freedom to share (such as if someone were a victim or being victimized) and that Folgheraiter could not keep anything of that nature in confidence. Appellant proceeded after this warning to confess that he had killed someone without provocation.

The threshold issue to decide is whether the Texas or California law of pastor-penitent privilege applies in this case. The communication between appellant and Folgheraiter occurred in California, but it related to the events that took place in Texas.

■ The Texas Supreme Court has used the "most significant relationship" test to determine which state's law should be used. The law of the state with the most significant relationship will apply to a particular substantive issue. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984). In regard to certain types of privileged communications, Texas courts have held that the state where the communication took place is the state with the most significant relationship. *Tompkins v. State*, 774 S.W.2d 195, 215–16 (Tex.Crim. App.1987), *aff'd per curiam*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989) (psychologist-patient communication privilege governed by laws of state where communication took place); *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 647 (Tex.1995) (attorney-client communication privilege

governed by laws of state where communication took place). Based on the logical extension of *Tompkins* and *Leggat*, we hold that California law applies in this instance because the communication took place in California.

California law states that a "penitential communication" is privileged. A penitetial communication is:

> [a] communication made in confidence, in the presence of no third person so far as the penitent is aware, to a clergyman who, in the course of the discipline or practice of his church, denomination, or organization, is authorized or accustomed to hear such communications and, under the discipline or tenets of his church, denomination, or organization, has a duty to keep such communications secret.

CAL.EVID.CODE § 1032 (West 1995). Folgheraiter testified that the policy of his church allowed him to freely disclose to third persons the types of communications such as the one appellant made.

■ Since Folgheraiter's church did not make a practice of keeping these communications confidential, no privilege existed, and allowing Folgheraiter's testimony about appellant's communication was not error.

We overrule issue one.

## ISSUE NUMBER TWO: APPELLANT'S STATEMENT TO POLICE

Appellant gave a written statement to law enforcement officers after his arrest in California. At trial, appellant claimed the statement was illegally coerced based on promises made by the officers. The officers who took the statement from appellant testified that no promises were made.

■ The trial court is the sole and exclusive trier of fact and judge of the credibility of the witnesses in a hearing on a motion to suppress evidence. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.

1990). When reviewing the trial court's decision, the appellate court's role is to determine whether the trial court properly applied established law to the facts. *Id.* If the trial court's decision is supported by the record, the appellate court must uphold the ruling. *Id.*

◼ In this case, the record supports the trial court's decision. Law enforcement officials testified that no promises were made to appellant in exchange for his statement. Although appellant's testimony conflicts with that of law enforcement officials, it is the sole province of the trier of fact to determine which witnesses are credible.

We overrule issue two.

## ISSUE NUMBER THREE: APPELLANT'S REQUEST FOR SPECIAL JURY INSTRUCTION

In issue three, appellant contends that because there was a fact issue regarding whether his statement to Folgheraiter was voluntarily made, he was entitled to a special instruction under article 38.23 of the Texas Code of Criminal Procedure.[1] Specifically, appellant argues that Folgheraiter never made it clear to him that the conversation would not be confidential, while Folgheraiter testified he made that point "very clear" to appellant.

As discussed above, Texas law requires the application of California law to the privilege issue. If Texas law were applicable to the communication, a fact question would have been raised because rule 505 provides that a communication to a member of the clergy is confidential "if made privately and *not intended for further disclosure* except to other persons present in furtherance of the purpose of the communication." Therefore, appellant's subjective intent would have been relevant, and would have been an issue for the jury to consider.

However, we have already held that California law applies to the communication, and, under California law, there is no fact question to be resolved. Folgheraiter testified, "We as pastors at our church don't keep any counseling appointments confidential when the areas cross into somebody being a victim or victimizing somebody else, and that is always the intent." Therefore, the State showed that the discipline or tenets of Folgheraiter's church did not require him to keep the communication secret. *See* CAL. EVID. CODE § 1032 (West 1995). No evidence was introduced to the contrary. Therefore, no fact question was presented for the jury. There being no fact question, the trial court properly denied appellant's request for an instruction under article 38.23.[2]

We overrule issue three.

We affirm the judgment of the trial court.

1. Under article 38.23, evidence "obtained by an officer or other person in violation of any provision of the Constitution or law of the State of Texas, or of the Constitution or law of the United States of America" is not admissible. TEX.CODE CRIM. P. art. 38.23 (Vernon 1999). Additionally, article 38.23 states that, if there is an issue about whether the evidence was lawfully obtained, the jury is entitled to an instruction to the effect that, if the jury believes the evidence was obtained in violation of the law, then the jury shall disregard the evidence. Such an instruction is mandatory when a disputed fact issue concerning the law exists. *Murphy v. State,* 640 S.W.2d 297, 299 (Tex.Crim.App.1982); *Withers v.*

*State,* 902 S.W.2d 122, 125 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd).

2. We note that there is no Texas case that applies article 38.23 to exclude evidence obtained in violation of the communication to clergy privilege, although the Court of Criminal Appeals has held that evidence *may* be excluded if obtained in violation of the attorney-client privilege. *See Henderson v. State,* 962 S.W.2d 544, 553–57 (Tex.Crim.App. 1997). However, because no fact question was raised regarding the application of the California privilege in this case, we need not address this issue, and decline to do so.