**Von Odis AMIE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–01–01114–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 26, 2002.

Nelda F. Williams, Tracy L. Davenport, State Counsel for Offenders, Huntsville, TX, for Appellant.

Kelly T. Weeks, Special Prosecution Unit, Huntsville, TX, Candace Norris, Chief Appellate Attorney, Special Prosecution Unit, Plainview, TX, for State.

Panel consists of Justices NUCHIA, JENNINGS, and RADACK.

## OPINION

SHERRY J. RADACK, Justice.

Appellant, Von Odis Amie, pleaded not guilty to aggravated assault on a public servant. The jury found appellant guilty of the lesser-included offense of assault on a public servant and assessed punishment at 75 years imprisonment. In one point of error, appellant argues the trial court erred in denying his motion to change venue. We affirm.

## Background

Appellant was indicted for the offense of aggravated assault on a correctional officer with a deadly weapon.[1] The incident occurred on July 11, 1999, at the Wynne Unit of the Texas Department of Criminal Justice (TDCJ). Correctional officer Lance Waldo testified that he was passing out food trays to inmates, and as he passed appellant's cell, appellant yelled for Waldo to remove a food tray from his cell. In the process of unlocking the food opening on appellant's cell door, Waldo observed a quick movement in the background. Immediately, Waldo's "vision went blurry and his face was burning real bad."[2] Waldo then saw appellant jumping around, laughing, and saying "I got you back, I got you." As a result of this incident, Waldo suffered a temporary loss of vision, and first and second degree burns around his nose and eyes.

Appellant filed a pretrial motion to change venue, arguing that there was so great a prejudice against him in Walker County that a fair and impartial trial was rendered either impossible or highly unlikely. A pretrial hearing was held on appellant's motion to change venue, and the trial court denied the motion.[3] Appellant again moved motion to change venue at the conclusion of voir dire, and that motion was also denied. The jury found appellant guilty of the lesser-included offense of assault on a public servant.

## Standard of Review

We review the denial of a motion to change venue for an abuse of discretion. *Dewberry v. State,* 4 S.W.3d 735, 745–746 (Tex.Crim.App.1999); *see DeBlanc v. State,* 799 S.W.2d 701, 705 (Tex.Crim.App. 1990). We will not reverse a trial court's ruling on the motion to change venue if the ruling was within the realm of reasonableness, given the facts presented to the trial court. *Powell v. State,* 898 S.W.2d 821, 826 (Tex.Crim.App.1994).

## Denial of Change of Venue

Appellant argues, generally, that an inmate accused of assaulting a (TDCJ) cor-

---

1. The deadly weapon was hot liquid.

2. Waldo later learned the substance thrown in his face was a mixture of hot syrup and water.

3. The judge who overruled the motion found the jurors of Walker County, Texas, held a higher respect for the laws of God and man than they do the institution of Texas Department of Criminal Justice (TDCJ).

rectional officer cannot obtain a fair trial by an impartial jury in Walker County, Texas, due to feelings of kinship and affiliation on the part of Walker County residents toward TDCJ and its employees. Specifically, he alleges there exists in Walker County a bias against a class of individuals consisting of inmates who assault TDCJ correctional officers, which causes a presumption against the inmate's innocence and renders the State's burden of proof in this type of case significantly lower.

The Code of Criminal Procedure provides that:

[a] change of venue may be granted in any felony or misdemeanor case punishable by confinement on the written motion of the defendant, supported by his own affidavit and the affidavit of at least two credible persons, residents of the county where the prosecution is instituted, for either of the following causes, the truth and sufficiency of which the court shall determine:

1. That there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial; and ...

TEX.CODE CRIM. PROC. ANN. art. 31.03(a)(1) (Vernon Supp.2002).

■ A defendant seeking a change of venue bears a heavy burden to prove the existence of prejudice in the community and that the likelihood of obtaining a fair and impartial jury is doubtful. *Powell*, 898 S.W.2d at 826. To satisfy this burden, the defendant must demonstrate an actual, identifiable prejudice on the part of the members of his jury, and that prejudice has so permeated the community that prospective jurors' prejudicial opinions cannot be set aside. *Moore v. State*, 935 S.W.2d 124, 129 (Tex.Crim.App.1996).

Most motions to change venue are based, at least in part, on allegations of negative pretrial publicity. As such, most of the decisions that interpret article 31.03 are based upon factual scenarios involving issues of the presence and extent of pretrial publicity. Although this case does not involve issues of pretrial publicity, a review of judicial authority involving issues of pretrial publicity is helpful to provide a framework for examining the existence of prejudice within the community in this case.

■ Courts have noted that a change of venue is required only where pretrial publicity is "so pervasive and prejudicial as to create a reasonable probability that an impartial jury cannot be impaneled even with the most careful voir dire." *Narvaiz v. State*, 840 S.W.2d 415, 428 (Tex.Crim. App.1992). Due process does not, however, require that jurors come completely ignorant of the facts of the case. *Id.*; *see also Bell v. State*, 938 S.W.2d 35 (Tex. Crim.App.1996). In the *Penry* decision by the Texas Court of Criminal Appeals, the court held that knowledge of some details of the case by venire members was acceptable because of assurances from those members that they could try the case strictly on the evidence. 903 S.W.2d 715, 728 (Tex.Crim.App.1995). The *Penry* court, while examining the extent of pretrial publicity, also reviewed testimony suggesting that Walker County jurors were prejudiced against defendants because of their affiliation with the TDCJ. *Id.* at 727. In the court's analysis, the focus was on evaluating the presence of prejudice in the community; the sources of the alleged prejudice in that decision were not distinguished. *Id.* Other courts have also recognized that the extent of pretrial publicity is not the only factor that should be used to examine the existence of prejudice. Any factors present that are likely

to affect the candor and veracity of prospective jurors are also considered. *Henley v. State,* 576 S.W.2d 66, 72 (Tex.Crim. App.1978).

A common thread among the analyses of the courts listed above is that actual prejudice, regardless of its source, must be shown by the defendant to succeed on a motion to change venue. We adopt this as a guiding principle in our analysis. We now review the evidence presented by appellant and will reverse only if we find that the trial court's decision was not within "the realm of reasonableness." *Powell,* 898 S.W.2d at 826.

■ At the pretrial hearing on the motion to change venue, appellant presented three witnesses to support his motion. Hal Ridley, a 20–year resident of Walker County and an attorney, testified that appellant would have an "uphill battle" because of the general makeup of the Walker County jury. Donald Kraemer, a 30–year resident and former deputy district attorney, testified that appellant would not be able to obtain a fair and impartial trial. Scott Bounds, a 20–year resident of Walker County and former Huntsville city attorney, testified that he did not believe appellant could obtain a fair trial. Appellant's counsel testified that it would be impossible for Walker County jurors to be fair in this type of case. The testimony from all of the appellant's witnesses was based upon the proposition that, because of Walker County residents' direct and indirect affiliations with the TDCJ, and because of TDCJ's influence in the community, an unfair prejudice would exist that warranted a change in venue.

The State presented the testimony of A.P. Merillat, an investigator for the Special Prosecution Unit in Walker County, who stated that he had experience with 95 jury trials throughout the state, and he had no doubt that appellant could obtain a fair and impartial trial in Walker County. Merillat also testified that he was familiar with Walker County criminal trials where defendants were found not guilty. Merillat also testified about instances where guards were indicted and prosecuted for crimes within Walker County. Manny Price testified for the State that he had traveled extensively through counties all over the United States and saw no reason why appellant could not get a fair trial in Walker County, noting that Walker County residents were a little too liberal for his taste.

Based upon the record, we are unable to find that appellant has met his heavy burden of showing an actual and identifiable prejudice, as required by *Moore,* that cannot be set aside. We note that the Texas Court of Criminal Appeals reviewed similar testimony from Hal Ridley in the *Penry* decision, wherein Ridley not only stated that the jurors would be prejudiced because of their affiliation with the TDCJ, but also because of the negative pretrial publicity in that case. *Penry,* 903 S.W.2d at 727. Here, we do not have testimony of negative pretrial publicity, and, as in *Penry,* we have no evidence of actual and identifiable prejudice that cannot be set aside. Upon review of the testimony presented to the trial court, including testimony regarding instances where defendants were found not guilty of criminal offenses, and where TDCJ personnel were indicted and prosecuted within the county, we conclude that the trial court did not act outside of the realm of reasonableness when it found no permeating prejudice and denied appellant's motion for a change of venue.

Appellant also asserts that the voir dire conducted in this case demonstrates evidence of prejudice within Walker County, and complains in particular that at least one objectionable venire member remained

on the jury after the challenges for cause and peremptory strikes were exercised.[4]

Appellant elicited testimony from the venire member that he knew of two potential witnesses for the State and had already formed an opinion about whether or not they were credible. However, the venire member later stated that he could be fair and impartial. After the conclusion of voir dire, the trial court again denied appellant's motion to change venue. The testimony of the venire member in this case is inconclusive at best and does not establish that residents of Walker County have a prejudice against appellant.

Upon review of the voir dire record, we find no clear evidence of an actual and identifiable prejudice permeating Walker County residents, which could not be set aside. We analogize to the *Penry* decision in which the court, in its examination of the motion to change venue, noted that some venire members had some previous knowledge of the facts of the case, but were still acceptable in light of their assurances that they could try the case strictly by the evidence. *Penry*, 903 S.W.2d at 728. Here, while some jurors selected to try the case may have known of persons employed by TDCJ, all 12 of them were among the voir dire panel that indicated to the trial court that it could be fair and impartial.

We find that the evidence presented by appellant of the existence of prejudice against TDCJ inmates, including the testimony of the venire member, does not establish actual and identifiable prejudice to the extent that the trial court's decision was beyond the realm of reasonableness. As such, we hold that the trial court did not abuse its discretion in denying appellant's motion to change venue.

4. As appellant's sole point of error in this case complains of the trial court's denial of his motion to change venue, we will not discuss

We overrule appellant's sole point of error.

### Conclusion

We affirm the judgment of the trial court.

the appropriateness of the trial court's denial of any challenges for cause.